**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq.
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| REGINA CRITCHLEY, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DR. REDDY'S LABORATORIES LIMITED, G.V. PRASAD, and SAUMEN CHAKRABORTY,<br><br>Defendants. | Case No. 3:17-cv-06436<br><br>**AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Regina Critchley ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's amended complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Dr. Reddy's Laboratories Limited ("Dr. Reddy's" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial

evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired the publicly traded securities of Dr. Reddy's from June 17, 2015 through August 10, 2017, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4. Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as the Company conducts business in this judicial District.

5. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the accompanying Certification, purchased Dr. Reddy's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

7. Defendant Dr. Reddy's is an integrated pharmaceutical company which operates in three segments: global genetics, pharmaceutical services and active ingredients ("API"); and proprietary products. The Company is incorporated and headquartered in Telangana, India and maintains an office at 107 College Road East, Princeton, New Jersey. The Company's securities were traded on the New York Stock Exchange ("NYSE") under the ticker "RDY."

8. Defendant G.V. Prasad ("Prasad") was the Chief Executive Officer ("CEO") and Co-Chairman of the Company throughout the Class Period.

9. Defendant Saumen Chakraborty ("Chakraborty") was the Chief Financial Officer ("CFO") and President throughout the Class Period.

10. Defendants Prasad and Chakraborty are sometimes referred to herein as the "Individual Defendants."

11. Each of the Individual Defendants:

(a) directly participated in the management of the Company;

(b) was directly involved in the day-to-day operations of the Company at the highest levels;

(c) was privy to confidential proprietary information concerning the Company and its business and operations;

(d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

12. The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

13. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

14. The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

15. On June 17, 2015, the Company filed its annual report on Form 20-F for the fiscal year ended March 31, 2015 (the "2015 20-F") with the SEC, which provided the Company's annual financial results and position. The 2015 20-F was signed by Defendants Prasad and Chakraborty. The 2015 20-F contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Prasad and Chakraborty attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

16. The 2015 20-F discussed the Company's manufacturing practices as a whole, stating in relevant part:

> **Execution Excellence (Building Blocks)**
>
> Execution excellence provides the framework to create sustainable customer value across all of our activities. We have been investing in the following to achieve this:
>
> * * *
>
> - Quality. We are fully dedicated to quality and have robust quality processes and systems in place at our developmental and manufacturing facilities to ensure that every product is safe and of high quality. In addition, we have integrated "Quality by Design" to build quality into all processes and use quality tools to minimize process risks.

17. The 2015 20-F discussed the Company's manufacturing practices in the United States, stating in relevant part:

> Before approving a product, the FDA also requires that our procedures and operations conform to current Good Manufacturing Practice ("cGMP") regulations, relating to good manufacturing practices as defined in the U.S. Code of Federal Regulations. We must follow cGMP regulations at all times during the manufacture of our products. We continue to spend significant time, money and effort in the areas of production and quality to help ensure full compliance with cGMP regulations.

18. The statements referenced in ¶¶ 15 - 17 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company lacked an effective corporate quality system; and (2) as a result, Defendants' public statements were materially false and misleading at all relevant times.

19. On November 6, 2015, the Company disclosed it had received a warning letter from the U.S. Food and Drug Administration (the "FDA") regarding its API manufacturing facilities at Srikakulam, Andhra Pradesh and Miryalaguda, Telangana, as well as its Oncology

Formulation manufacturing facility at Duvvada, Visakhapatnam, Andhra Pradesh (the "FDA Warning Letter"). The Company's press release stated in relevant part:

> Dr. Reddy's Laboratories (BSE: 500124 / NYSE: DRREDDY) today issued a statement acknowledging that it has received a warning letter issued by the US FDA dated November 05, 2015 relating to its API manufacturing facilities at Srikakulam, Andhra Pradesh and Miryalaguda, Telangana, as well as Oncology Formulation manufacturing facility at Duvvada, Visakhapatnam, Andhra Pradesh. This action follows the earlier inspections of these sites by the agency in November 2014, January 2015 and February 2015 respectively.

20. The FDA Warning Letting included many observations, including: (i) Failure to maintain complete data derived from all laboratory tests conducted to ensure compliance with established specifications and standards; (ii) Failure to prevent unauthorized access or changes to data, and to provide adequate controls to prevent omission of data; (iii) Failure to record activities at the time they are performed; (iv) Failure to control the issuance, revision, superseding and withdrawal of all documents with maintenance of revision histories; (v) Failure to adequately investigate out-of-specification results and implement appropriate corrective actions; (vi) Failure to maintain all quality-related documents appropriately; (vii) Failure to identify storage containers for intermediates in batch production records; (viii) Failure to thoroughly investigate any unexplained discrepancy or failure of a batch or any of its components to meet any of its specifications, whether or not the batch has already been distributed. (21 CFR 211.192); (ix) Failure to follow appropriate written procedures designed to prevent microbiological contamination of drug products purporting to be sterile, and that include validation of all aseptic and sterilization processes (21 CFR 211.113(b)); and (x) Failure to establish adequate written procedures for production and process controls designed to assure that the drug products you manufacture have the identity, strength, quality, and purity they purport or

are represented to possess, and your firm's quality control unit did not review and approve those procedures, including any changes. (21 CFR 211.100(a)).

21. On this news, shares of Dr. Reddy's fell $11.60 per share or over 18% from its previous closing price to close at $52.81 per share on November 6, 2015, damaging investors.

22. On November 27, 2015, the FDA published the FDA Warning Letter on the agency's website, making the full text available publicly for the first time. The text of the FDA Warning Letter confirmed the serious nature of the Company's quality control failures, the deteriorating relationship between the Company and the FDA, and the fact that the inspection team had "discovered" an "uncontrolled" quality control facility—*i.e.*, that the FDA had uncovered a secret quality control laboratory that the Company had equipped, staffed, and operated for the purpose of concealing failed quality control results from regulators.

23. On this news, shares of Dr. Reddy's fell $2.80 per share, or over 5% from its previous closing price to close at $46.94 per share on November 27, 2015, damaging investors.

24. On June 23, 2016, the Company filed its annual report on Form 20-F for the fiscal year ended March 31, 2016 (the "2016 20-F") with the SEC, which provided the Company's annual financial results and position. The 2016 20-F was signed by Defendants Prasad and Chakraborty. The 2016 20-F contained signed SOX certifications by Defendants Prasad and Chakraborty attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

25. The 2016 20-F discussed the Company's manufacturing practices, stating in relevant part:

> **Execution Excellence (Building Blocks)**
>
> Execution excellence provides the framework to create sustainable customer value across all of our activities. We have been investing in the following to achieve this:
>
> * * *
>
> - Quality. We are fully dedicated to quality and have robust quality processes and systems in place at our developmental and manufacturing facilities to ensure that every product is safe and of high quality. In addition, we have integrated "Quality by Design" to build quality into all processes and use quality tools to minimize process risks.

26. The statements referenced in ¶¶ 24 - 25 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company lacked an effective corporate quality system; and (2) as a result, Defendants' public statements were materially false and misleading at all relevant times.

27. On July 26, 2016, Dr. Reddy's issued a press release announcing the results from operations for the Company's first quarter of fiscal 2017, ending June 30, 2016. The Company reported weak results, including a 14.26 percent decline in consolidated sales and net profit more than 68 percent below analysts' estimates. In connection with the press release, Defendant Prasad stated in part:

> We have come through a very difficult quarter, with ***our top and bottom lines impacted by a decline in volume growth, particularly in the US market*** and the loss of business in Venezuela. We also faced a number of challenges in the quarter including price erosion and ***delayed launches as a result of the warning letter, which significantly impacted our earnings***.
>
> (Emphases added.)

28. On this news, shares of Dr. Reddy's fell $7.99 per share or approximately 15% from its previous closing price to close at $44.11 per share on July 26, 2016, damaging investors.

29. In early 2017, the FDA conducted an inspection of one of the Company's oncology formulation facilities, which the FDA completed on March 8, 2017. In connection with the conclusion of this inspection the FDA issued the Company a Form 483 that set forth 13 observations. Dr. Reddy's disclosed the existence of this list of manufacturing flaws in a filing with the Bombay Stock Exchange, but did not disclose the nature or details of the observations, stating simply:

> The audit of company's formulation manufacturing facility at Duwada, Visakhapatnam, by the US FDA, has been completed on March 8, 2017. The company ha[s] been issued a Form 483 with 13 observations, which the company is addressing.

30. On this news, shares of Dr. Reddy fell $2.21 per share or approximately 5% over the following two trading sessions, to close at $40.23 per share on March 9, 2017, damaging investors.

31. On June 19, 2017, the Company filed its annual report on Form 20-F for the fiscal year ended March 31, 2017 (the "2017 20-F") with the SEC, which provided the Company's annual financial results and position. The 2017 20-F was signed by Defendants Prasad and Chakraborty. The 2017 20-F contained signed SOX certifications by Defendants Prasad and Chakraborty attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

32. The 2017 20-F discussed the Company's manufacturing practices, stating in relevant part:

> **Operating priorities**
>
> Execution excellence provides the framework to create sustainable customer value across all of our activities. We have been investing in the following to achieve this:
>
> * * *
>
> - Quality: We are fully dedicated to quality and have robust quality processes and systems in place at our developmental and manufacturing facilities to ensure that every product is safe and of high quality. In addition, we have integrated "Quality by Design" to build quality into all processes and use quality tools to minimize process risks.

33. The statements referenced in ¶¶ 31 - 32 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company lacked an effective corporate quality system; and (2) as a result, Defendants' public statements were materially false and misleading at all relevant times.

34. On August 10, 2017, the Company published a letter disclosing that the Regulatory Authority of Germany (Regierung von Oberbayern) sent notice to Dr. Reddy's wholly-owned subsidiary in Germany, betapharm Arzneimittel GmbH, that one of the Company's plants lost its Good Manufacturing Practices ("GMP") compliance certificate, stating in relevant part:

> betapharm Arzneimittel GmbH, Germany (our wholly-owned subsidiary) received a communication from the Regulatory Authority of Germany (Regierung von Oberbayern) last night, that the GMP compliance certificate in respect of the Company's Formulations Manufacturing Unit 2 plant in Bachupally, Hyderabad is not renewed consequent to the recent inspection of the plant. Pending revocation of the non-compliance notification, the plant will not be able to make any further despatch to the European Union until the next inspection, to be initiated by an invitation from betapharm.

This is for your information and record.

35. On this news, shares of Dr. Reddy fell $1.97 per share or approximately 6% from its previous closing price to close at $30.33 per share on August 10, 2017, damaging investors.

36. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

37. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Dr. Reddy's securities publicly traded on the NYSE during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

38. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Dr. Reddy's securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

39. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

40. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

41. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;
- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;
- whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;
- whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;
- whether the prices of Dr. Reddy securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

42. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

43. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;
- the omissions and misrepresentations were material;
- Dr. Reddy's securities are traded in efficient markets;
- the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;
- the Company traded on the NYSE, and was covered by multiple analysts;
- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and
- Plaintiff and members of the Class purchased and/or sold Dr. Reddy's securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

44. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

45. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

**COUNT I**

**Violation of Section 10(b) of The Exchange Act and Rule 10b-5**
**Against All Defendants**

46. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

47. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

48. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

49. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Dr. Reddy's securities during the Class Period.

50. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

51. Defendants who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

52. As a result of the foregoing, the market price of Dr. Reddy's securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Dr. Reddy's securities during the Class Period in purchasing Dr.

Reddy's securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

53. Had Plaintiff and the other members of the Class been aware that the market price of Dr. Reddy's securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased Dr. Reddy's securities at the artificially inflated prices that they did, or at all.

54. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

55. By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of Dr. Reddy's securities during the Class Period.

**COUNT II**

**Violation of Section 20(a) of The Exchange Act**
**Against The Individual Defendants**

56. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

57. By reason of the foregoing, the Company violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder.

58. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

59. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

60. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Dr. Reddy's securities.

61. Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

62. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: October 19, 2017

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By:/s/ Laurence M. Rosen
Laurence M. Rosen
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

Counsel for Plaintiff