## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: DR. REDDY'S LABORATORIES LTD. SECURITIES LITIGATION | Case No. 3:17-cv-06436-PGS-DEA <br><br> <u>Class Action</u> |

## LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION <u>SETTLEMENT AND PLAN OF ALLOCATION</u>

**KAPLAN FOX & KILSHEIMER LLP**
Joel B. Strauss
850 Third Avenue
New York, New York 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714
E-mail: jstrauss@kaplanfox.com

William J. Pinilis
160 Morris Street
Morristown, New Jersey 07960
Telephone: (973) 656-0222
Facsimile: (973) 401-1114
E-mail: wpinilis@kaplanfox.com

*Liaison Counsel for the Lead Plaintiff
and the Proposed Class*

[Additional Counsel Appear on Signature Page]

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ..................................................................................................................... 3

I.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
ADEQUATE AND WARRANTS FINAL APPROVAL.................................................. 3

    A.    The Law Favors and Encourages Settlement of Class Action Litigation .............. 3

    B.    The Standards for Final Approval........................................................................... 3

    C.    The Settlement Was Reached after Robust Arm's-Length Negotiations, Is
Procedurally Fair, and Is Entitled to a Presumption of Reasonableness................. 6

    D.    Application of the *Girsh* Factors Supports Approval of the Settlement as
Substantively Fair, Reasonable, and Adequate ...................................................... 7

        1.    Complexity, Expense and Likely Duration of this Action Support
Approval of the Settlement ........................................................................ 7

        2.    The Reaction of the Settlement Class ......................................................... 9

        3.    The Stage of the Proceedings and the Amount of Information
Available to Counsel Support Approval of the Settlement....................... 10

        4.    The Risks of Establishing Liability Weigh in Favor of Final
Approval .................................................................................................. 12

        5.    Risk of Maintaining Class Certification Through Trial Weighs in
Favor of Approval.................................................................................... 16

        6.    The Ability of Defendants to Withstand a Greater Judgment................... 17

        7.    The Size of the Settlement Fund Considering the Range of Possible
Recovery and the Risks of Litigation Support Approval of the
Settlement ................................................................................................ 17

    E.    The *Prudential* Considerations Also Support the Settlement ............................... 19

    F.    Application of the Factors Identified in the Amendments to Rule 23(e)(2)
Support Approval of the Settlement as Fair, Reasonable, and Adequate ............ 20

        1.    Lead Plaintiff and Lead Counsel Have Adequately Represented the
Settlement Class....................................................................................... 20

i

2.     The Settlement Is the Result of Arm's-Length Negotiations.................... 20

3.     The Relief Provided to the Settlement Class is Adequate ........................ 21

II.    THE PLAN OF ALLOCATION FOR THE PROCEEDS OF THE
SETTLEMENT IS FAIR AND REASONABLE AND SHOULD BE
APPROVED ........................................................................................................ 23

III.   CERTIFICATION OF THE SETTLEMENT CLASS REMAINS WARRANTED........ 24

IV.   NOTICE TO THE SETTLEMENT CLASS SATISFIED THE REQUIREMENTS
OF RULE 23 AND DUE PROCESS............................................................................ 25

V.    CONCLUSION.............................................................................................................. 26

# **TABLE OF AUTHORITIES**

**Page(s)**

## Cases

*In re Am. Bus. Fin. Servs. Inc. Noteholders Litig.*,
No. 05-232, 2008 WL 4974782 (E.D. Pa. Nov. 21, 2008) ....................................18

*In re AT&T Corp. Sec. Litig.*,
455 F.3d 160 (3d Cir. 2006)...................................................................................5

*In re Auto. Refinishing Paint Antitrust Litig.*,
617 F. Supp. 2d 336 (E.D. Pa. 2007) ...................................................................12

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
No. 07-61542, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011), *aff'd*, *Hubbard v.
BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).....................................8

*Beneli v. BCA Fin. Servs., Inc.*,
324 F.R.D. 89 (D.N.J. 2018).................................................................................12

*Boyd v. Coventry Health Care Inc.*,
No. 09-2661, 2014 WL 359567 (D. Md. Jan. 31, 2014)........................................23

*Carson v. Am. Brands, Inc.*,
450 U.S. 79 (1981)..................................................................................................4

*Castro v. Sanofi Pasteur Inc.*,
No. 11-7178, 2017 WL 4776626 (D.N.J. Oct. 23, 2017) ........................................9

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)........................................................................ *passim*

*In re Cendant Corp. Sec. Litig.*,
109 F. Supp. 2d 235 (D.N.J. 2000), *aff'd,* 264 F.3d 201 (3d Cir. 2001)...................7

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*,
No. 12-1609, 2015 WL 965693 (W.D. La. Mar. 3, 2015)......................................18

*Dartell v. Tibet Pharms., Inc.*,
No. 14-3420, 2017 WL 2815073 (D.N.J. June 29, 2017).................................10, 11

*In re Datatec Sys., Inc. Sec. Litig.*,
No. 04-CV-525, 2007 WL 4225828 (D.N.J. Nov. 28, 2007) .................................13

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)..............................................................................................14

*Ehrheart v. Verizon Wireless*,
   609 F.3d 590 (3d Cir. 2010) .................................................................. 3, 4

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) .............................................................................. 25

*In re Gen. Instrument Sec. Litig.*,
   209 F. Supp. 2d 423 (E.D. Pa. 2001) .................................................... 24

*Girsh v. Jepson*
   521 F.2d 153 (3d Cir. 1975) ........................................................ *passim*

*Hubbard v. BankAtlantic Bancorp, Inc.*,
   688 F.3d 713 (11th Cir. 2012) .............................................................. 8

*In re Ikon Office Sols. Inc. Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000) ..................................................... 12, 17

*In re Ikon Office Sols., Inc. Sec. Litig.*,
   277 F.3d 658 (3d Cir. 2002) ................................................................. 12

*McDonough v. Horizon Blue Cross Blue Shield of New Jersey*,
   641 F. App'x. 146 (3d Cir. 2015) ....................................................... 3, 4

*In re Merck & Co. Vytorin ERISA Litig.*,
   No. 08–CV–285, 2010 WL 547613 (D.N.J. Feb. 9, 2010) ...................... 23

*In re Nat'l Football League Players Concussion Injury Litig.*,
   821 F.3d 410 (3d Cir. 2016) ............................................................... 3, 6

*In re Ocean Power Techs., Inc. Sec. Litig.*,
   No. 14-CV-3799, 2016 WL 6778218 (D.N.J. Nov. 15, 2016) ......... 14, 15, 24

*In re Omnivision Techs. Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................ 18

*In re Par Pharm. Sec. Litig.*,
   No. 06-3226, 2013 WL 3930091 (D.N.J. July 29, 2013) .............. 8, 15, 17, 18

*Pro v. Hertz Equip. Rental Corp.*,
   No. 06-3830, 2013 WL 3167736 (D.N.J. June 20, 2013) ...................... 12

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*
   148 F.3d 283 (3d Cir. 1998) .......................................................... 5, 16, 17

*In re Remeron Direct Purchaser Antitrust Litig.*,
   No. 03-0085, 2005 WL 3008808 (D.N.J. Nov. 9, 2005) .......................... 4

*In re Rent-Way Sec. Litig.*,
  305 F. Supp. 2d 491 (W.D. Pa. 2003)................................................................7, 16

*In re Schering-Plough Corp./ENHANCE Sec. Litig.*,
  No. 08–39, 2012 WL 4482032 (D.N.J. Sept. 25, 2012) .........................................20

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
  No. 08-372, 2013 WL 5505744 (D.N.J. Oct. 1, 2013) ...........................................9

*In re Schering-Plough Corp. Sec. Litig.*,
  No. 01-0829, 2009 WL 5218066 (D.N.J. Dec. 31, 2009).......................................17

*Schuler v. Medicines Co.*,
  No. 14-1149, 2016 WL 3457218 (D.N.J. June 24, 2016)...................................15, 18

*Smith v. Merck & Co.*,
  No. 13-2970, 2019 WL 3281609 (D.N.J. July 19, 2019) ........................................6

*In re Suprema Specialties, Inc. Sec. Litig.*,
  No. 02-168, 2008 WL 906254 (D.N.J. Mar. 31, 2008) ..........................................8

*Talone v. Am. Osteopathic Ass'n*,
  No. 16-CV-04644, 2018 WL 6318371 (D.N.J. Dec. 3, 2018).................................8

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
  No. 3:15-CV-07658-MAS-LHG, 2020 WL 3166456 (D.N.J. June 15, 2020) .........5

*Varacallo v. Mass. Mut. Life Ins. Co.*,
  226 F.R.D. 207 (D.N.J. 2005)................................................................................7

*In re Veritas Software Corp. Sec. Litig.*,
  396 F. App'x. 815 (3d Cir. 2010) .........................................................................26

*In re ViroPharma Inc. Sec. Litig.*,
  No. 12-2714, 2016 WL 312108 (E.D. Pa. Jan. 25, 2016)......................12, 13, 14, 15

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005)....................................................................................26

*Walsh v. Great Atl. & Pac. Tea Co.*,
  96 F.R.D. 632 (D.N.J. 1983), *aff'd*, 726 F.2d 956 (3d Cir. 1983) .........................4

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004)..................................................................................17

*Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*,
  758 F.2d 86 (3d Cir. 1985)....................................................................................26

**Rules**

Fed. R. Civ. P. 23 ..................................................................................................1, 16, 26

Fed. R. Civ. P. 23(a) .....................................................................................................24, 25

Fed. R. Civ. P. 23(b)(3) ................................................................................................24, 25

Fed. R. Civ. P. 23(c)(2) .......................................................................................................25

Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................................26

Fed. R. Civ. P. 23(e) ..............................................................................................................3

Fed. R. Civ. P. 23(e)(1) ........................................................................................................26

Fed. R. Civ. P. 23(e)(2) ...............................................................................................3, 5, 20

Fed. R. Civ. P. 23(e)(2)(C) ..................................................................................................21

Fed. R. Civ. P. 23(e)(2)(C)(i) ..............................................................................................21

Fed. R. Civ. P. 23(e)(2)(C)(ii) .............................................................................................21

Fed. R. Civ. P. 23(e)(2)(C)(iii) ............................................................................................22

Fed. R. Civ. P.  23(e)(2)(C)(iv) ...........................................................................................22

Fed. R. Civ. P.  23(e)(3) ...................................................................................................6, 22

Fed. R. Civ. P. 23(f) .............................................................................................................16

Fed. R. Civ. P. 26 .................................................................................................................11

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Lead Plaintiff, the Public Employees' Retirement System of Mississippi ("Lead Plaintiff" or "Mississippi PERS"), on behalf of itself and all other members of the proposed Settlement Class,[1] respectfully submits this Memorandum of Law in support of its motion for final approval of the proposed Settlement of the above-captioned class action, approval of the proposed Plan of Allocation for the proceeds of the Settlement, and final certification of the Settlement Class.

## PRELIMINARY STATEMENT

As detailed in the Stipulation, Lead Plaintiff and Dr. Reddy's Laboratories Ltd. ("Dr. Reddy's" or the "Company"), Dr. Reddy's Laboratories, Inc.; Abhijit Mukherjee; G.V. Prasad; Saumen Chakraborty; and Satish Reddy (collectively, "Defendants") agreed to settle all claims in the Action, and related claims, in exchange for the payment of $9,000,000.00 (the "Settlement Amount") for the benefit of the Settlement Class.  As described herein and in the accompanying Declaration of Michael H. Rogers in Support of (I) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Payment of Expenses ("Rogers Declaration"), filed herewith,[2] the Settlement is a favorable recovery for the Settlement Class, especially considering the risks and costs attendant to further protracted litigation.

---

[1] All capitalized terms used herein that are not defined have the same meanings given to them in the Stipulation and Agreement of Settlement, dated May 15, 2020 (the "Stipulation"), previously filed with the Court (ECF No. 95-1).

[2] The Rogers Declaration is an integral part of this submission and provides the Court with a detailed description of, *inter alia*: the history of the Action; the nature of the claims asserted; the negotiations leading to the Settlement; and the risks and uncertainties of continued litigation.  Citations to "¶" in this memorandum refer to paragraphs in the Rogers Declaration.

All exhibits noted herein are annexed to the Rogers Declaration.  For clarity, citations to exhibits that themselves have attached exhibits will be referenced as "Ex. ___ - ___." The first numerical reference is to the designation of the entire exhibit attached to the Rogers Declaration and the second reference is to the exhibit designation within the exhibit itself.

The Settlement was reached only after multiple, well-informed, arm's-length negotiations between highly experienced counsel who participated in a formal mediation process under the auspices of a respected and experienced mediator, Robert Meyer, Esq. of JAMS (the "Mediator"). The Settlement reflects a reasoned compromise based on the Parties' knowledge of the strengths and weaknesses of the case, which, from Lead Plaintiff's perspective, was gained through an extensive investigation, the drafting of a thorough and detailed amended complaint, briefing Defendants' motion to dismiss, briefing Lead Plaintiff's class certification motion, the discovery process, and consultations with experts in the fields of pharmaceutical regulation, damages, and loss causation. The Settlement is not "claims-made" and all proceeds of the Settlement, after the deduction of Court-approved fees and costs, will be distributed to eligible claimants. Thus, given the recovery for the Settlement Class, and the risks to continued litigation, as discussed further below and in the Rogers Declaration, Lead Plaintiff respectfully submits that the Settlement is fair, reasonable, and adequate, and warrants final approval by the Court.

Lead Plaintiff also requests that the Court approve the proposed Plan of Allocation, which is set forth in the Notice sent to Class Members. The Plan of Allocation was developed by Lead Plaintiff's damages expert in consultation with Lead Counsel. It provides a reasonable and equitable method for allocating the Net Settlement Fund among Class Members who submit valid claims. The Plan of Allocation is therefore fair and reasonable and should likewise be approved.

Notably, although the deadline for filing objections to the Settlement, Plan of Allocation, or Lead Counsel's request for an award of attorneys' fees and payment of expenses is still two

weeks away (September 8, 2020), as of the filing of this brief, there have been no objections nor any requests for exclusion from the Settlement Class.

## ARGUMENT

I.    **THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND WARRANTS FINAL APPROVAL**

A.    **The Law Favors and Encourages Settlement of Class Action Litigation**

Within the Third Circuit, and throughout the country, "a strong public policy exists, which is particularly muscular in class action suits, favoring settlement of disputes, finality of judgments and the termination of litigation." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010).[3]  The Third Circuit has noted the strong presumption in favor of voluntary settlement agreements "is especially strong 'in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'"  *Id.* at 595; *see also McDonough v. Horizon Blue Cross Blue Shield of New Jersey*, 641 F. App'x. 146, 150 (3d Cir. 2015) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged.").  This policy is well-served by approval of the Settlement of this complex securities class action that, absent resolution, would consume years of additional time of this Court and likely, years of additional appellate practice.

B.    **The Standards for Final Approval**

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the Court for approval.  The Settlement should be approved if the Court finds it "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *see also In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir. 2016) ("*NFL Players*"); *In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir. 2001).  "The strong judicial policy in favor

---

[3] All internal quotations and citations are omitted unless otherwise stated.

of class action settlement[s] contemplates a circumscribed role for the district courts in settlement review and approval proceedings." *Ehrheart*, 609 F.3d at 595.  While this Court has discretion to approve the Settlement, it should be hesitant to substitute its judgment for that of the Parties who negotiated the Settlement following "hard-fought, multi-year litigation." *McDonough*, 641 F. App'x. at 150.  "Courts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement . . . They do not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *see also Walsh v. Great Atl. & Pac. Tea Co.*, 96 F.R.D. 632, 642-43 (D.N.J. 1983), *aff'd*, 726 F.2d 956 (3d Cir. 1983).

The adequacy of a proposed settlement depends on whether the settlement is within a range that responsible and experienced attorneys could accept, considering all relevant risks.  *In re Remeron Direct Purchaser Antitrust Litig.*, No. 03-0085, 2005 WL 3008808, at *4 (D.N.J. Nov. 9, 2005) (citing *Walsh v. Great Atlantic and Pacific Tea Co.*, 96 F.R.D. 632, 642 (D.N.J. Nov. 9, 2005)).  That analysis recognizes the "uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Id*.  The Court should also assess the reasonableness of the Settlement pursuant to the factors set forth in *Girsh v. Jepson*:

> (1) the complexity, expense and likely duration of the litigation . . . ; (2) the reaction of the class to the settlement . . . ; (3) the stage of the proceedings and the amount of discovery completed . . . ; (4) the risks of establishing liability . . . ; (5) the risks of establishing damages . . . ; (6) the risks of maintaining the class action through the trial . . . ; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . . ; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

521 F.2d 153, 157 (3d Cir. 1975); *see also In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164-65

(3d Cir. 2006). "These factors are a guide and the absence of one or more does not automatically

render the settlement unfair." *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, No. 3:15-CV-07658-

MAS-LHG, 2020 WL 3166456, at *11 (D.N.J. June 15, 2020). The Third Circuit further advises

courts to consider, where applicable, the additional factors set forth in *In re Prudential Ins. Co.*

*Am. Sales Practice Litig. Agent Actions*:

> [T]he maturity of the underlying substantive issues, as measured by experience in
> adjudicating individual actions, the development of scientific knowledge, the
> extent of discovery on the merits, and other factors that bear on the ability to
> assess the probable outcome of a trial on the merits of liability and individual
> damages; the existence and probable outcome of claims by other classes and
> subclasses; the comparison between the results achieved by the settlement for
> individual class or subclass members and the results achieved – or likely to be
> achieved – for other claimants; whether class or subclass members are accorded
> the right to opt out of the settlement; whether any provisions for attorneys' fees
> are reasonable; and whether the procedure for processing individual claims under
> the settlement is fair and reasonable.

148 F.3d 283, 323 (3d Cir. 1998); *see also In re AT&T Corp. Sec. Litig.*, 455 F.3d at 164-65;

*Valeant Pharms.*, 2020 WL 3166456, at *7.

Additionally, pursuant to the recent amendments to Rule 23(e)(2), a court may approve a

settlement as "fair, reasonable, and adequate" after considering the following four factors, most

of which overlap with the *Girsh* factors:

> (A)   whether the class representatives and class counsel have
>       adequately represented the class;
>
> (B)   whether the proposal was negotiated at arm's length;
>
> (C)   whether the relief provided for the class is adequate, taking into
>       account:
>
>       i.    the costs, risks, and delay of trial and appeal;
>
>       ii.   the effectiveness of any proposed method of distributing
>             relief to the class, including the method of processing class-
>             member claims;

iii.    the terms of any proposed ward of attorneys' fees, including timing of payment; and

iv.    any agreement required to be identified under Rule 23(e)(3); and

(D)    whether the proposal treats class members equitably relative to each other.

For the reasons discussed herein and in the Rogers Declaration, the Settlement is a favorable result for the Settlement Class, presumptively fair, and the *Girsh* factors, applicable *Prudential* considerations, and criteria set forth in the Federal Rules strongly favor approval of the Settlement.

### C.    The Settlement Was Reached after Robust Arm's-Length Negotiations, Is Procedurally Fair, and Is Entitled to a Presumption of Reasonableness.

A proposed class action settlement is entitled to a presumption of fairness where it was reached by experienced counsel following arm's-length negotiations and adequate discovery. *See*, *e.g.*, *NFL Players*, 821 F.3d at 436. Here, the Settlement merits the presumption of fairness because it was achieved only after thorough arm's-length negotiations between well-informed and experienced counsel through a formal mediation process overseen by an experienced Mediator. Indeed, the "participation of an independent mediator in settlement negotiations virtually ensures that the negotiations were conducted at arm's length and without collusion between the parties." *Smith v. Merck & Co.*, No. 13-2970, 2019 WL 3281609, at *4 (D.N.J. July 19, 2019). Here, the Parties participated in a full-day mediation session on November 21, 2019, and while the mediation that day did not result in a resolution of the claims, the Parties continued to engage in settlement discussions until they each accepted a double-blind Mediator's proposal on January 22, 2020. ¶¶ 38-40.

Likewise, it is appropriate for this Court to give "substantial weight to the recommendations of experienced attorneys" who engaged in arm's-length negotiations. *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 240 (D.N.J. 2005) ("Class Counsel's approval of the Settlement also weighs in favor of the Settlement's fairness."); *In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235, 255 (D.N.J. 2000) (affording "significant weight" to counsel's recommendation), *aff'd,* 264 F.3d 201 (3d Cir. 2001); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 509 (W.D. Pa. 2003) (lead counsel's "assessment of the settlement as fair and reasonable is entitled to considerable weight").    Lead and Liaison Counsel have extensive experience prosecuting securities class actions and believe the Settlement is a very favorable result and in the best interest of the Settlement Class.    Additionally, the Settlement has the full support of Court-appointed Lead Plaintiff, the Mississippi Public Employee Retirement System. *See* Declaration of Ta'Shia S. Gordon, dated August 19, 2020, attached as Exhibit 1 to the Rogers Declaration.    Accordingly, the Settlement is entitled to a presumption of reasonableness.

   **D.    Application of the *Girsh* Factors Supports Approval of the Settlement
          as Substantively Fair, Reasonable, and Adequate**

To determine if a proposed settlement in a class action is fair, reasonable, and adequate, district courts in this Circuit consider the nine factors identified in *Girsh*, 521 F.2d at 157.    These factors strongly support approval of the Settlement.

   **1.    Complexity, Expense and Likely Duration of this
          Action Support Approval of the Settlement**

The first *Girsh* factor looks to the "complexity, expense, and likely duration of the litigation." *Girsh*, 521 F.2d at 157.    This factor addresses the "probable costs, in both time and money, of continued litigation." *Cendant*, 264 F.3d at 233.    A settlement is favored where "continuing litigation through trial would have required additional discovery, extensive pretrial motions addressing complex factual and legal questions, and ultimately a complicated, lengthy

trial." *Talone v. Am. Osteopathic Ass'n,* No. 16-CV-04644, 2018 WL 6318371, at *14 (D.N.J. Dec. 3, 2018) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004)). Courts have noted that "[s]ecurities fraud class actions are notably complex, lengthy, and expensive cases to litigate." *In re Par Pharm. Sec. Litig.*, No. 06-3226, 2013 WL 3930091, at *4 (D.N.J. July 29, 2013); *see also In re Suprema Specialties, Inc. Sec. Litig.*, No. 02-168, 2008 WL 906254, at *4-5 (D.N.J. Mar. 31, 2008) (finding complexity of the securities class action supports final approval). This case is no exception.

Here, achieving a litigated verdict in this Action for Lead Plaintiff and the Settlement Class would require substantial additional time and expense. Lead Plaintiff reasonably expects the continued prosecution of this complex Action (through class certification, the completion of discovery, summary judgment, and trial) to be very risky and involve substantial additional work and expense without necessarily resulting in any recovery for the Settlement Class. *See generally* Rogers Decl. at §VII.

To obtain a judgment at trial, Lead Plaintiff would have to complete and prevail on the contested motion for class certification and any subsequent interlocutory appeals (should the Court render a favorable decision). Lead Plaintiff would also have to complete both fact and expert discovery, the former of which would necessarily take place, to large extent, in India. Then, after the close of discovery, Lead Plaintiff would need to brief and argue inevitable summary judgment motions, *Daubert* motions, and other pre-trial motions. Assuming favorable decisions, the subsequent trial would be complex and expensive, requiring significant factual and expert testimony to prove the elements of Lead Plaintiff's claims. Importantly, even a jury verdict would not guarantee the recovery of damages for the Settlement Class that this $9,000,000 cash recovery does. *In re BankAtlantic Bancorp*, *Inc. Sec. Litig.*, No. 07-61542,

2011 WL 1585605, at *1 (S.D. Fla. Apr. 25, 2011) (in case tried by Labaton Sucharow, court granted defendants' judgment as a matter of law on the basis of loss causation, overturning jury verdict and award in plaintiff's favor), *aff'd*, *Hubbard v. BankAtlantic Bancorp, Inc*., 688 F.3d 713 (11th Cir. 2012).  Defendants would likely appeal any verdict favorable to Lead Plaintiff, and the appellate process could last several years, with no assurance of a favorable outcome for the Settlement Class.  Thus, additional, protracted, and expensive litigation efforts could result in a recovery less than that of the Settlement Amount, or even nothing at all.

### 2.    The Reaction of the Settlement Class

This factor "requires the Court to evaluate whether the number of objectors, in proportion to the total class, indicates that the reaction of the class to the settlement is favorable."  *In re Schering-Plough Corp. Enhance Sec. Litig.*, No. 08-372, 2013 WL 5505744, at *2 (D.N.J. Oct. 1, 2013).  It is well-established that the lack of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.  *Castro v. Sanofi Pasteur Inc.*, No. 11-7178, 2017 WL 4776626, at *4 n.3 (D.N.J. Oct. 23, 2017).

Pursuant to the Court's Preliminary Approval Order, as of June 2, 2020, the Court-appointed Claims Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), began mailing copies of the Notice and Proof of Claim to potential Settlement Class Members and their nominees.  *See* Declaration of Jordan Broker Regarding: (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion, attached as Exhibit 2 to the Rogers Declaration.  To date, Epiq had mailed a total of 25,638 copies of the Claim Packet (consisting of the Notice and Claim Form) to potential Class Members and their nominees.  *Id*. at ¶ 10.  In addition, Summary Notice was published in *Investor's Business Daily* and *PR Newswire* on June 15, 2020.  *Id*. at ¶ 12.  The Notice set out

9

the essential terms of the Settlement and informed potential Class Members of their right to opt out of the Settlement Class or object to any aspect of the Settlement. *See generally* Ex. 2-A.

The September 8, 2020 deadline to file objections or requests for exclusion is only two weeks away. Nevertheless, as of the date of this motion, no individuals, entities, or institutions have filed or served any objections to the Settlement or requests for exclusion. Ex. 2 at ¶ 16; ¶ 49. Accordingly, the reaction of the Settlement Class to date supports approval of the Settlement.[4]

### 3. The Stage of the Proceedings and the Amount of Information Available to Counsel Support Approval of the Settlement

The third *Girsh* factor requires a court to consider "the degree of case development that class counsel have accomplished prior to settlement" to "determine whether counsel had an adequate appreciation of the merits of the case before negotiating" the settlement. *Cendant*, 264 F.3d at 235; *see also Dartell v. Tibet Pharms., Inc.,* No. 14-3420, 2017 WL 2815073, at *5 (D.N.J. June 29, 2017) (finding, in a securities class action, the third *Girsh* factor weighed in favor of settlement where the parties had "fully briefed motions to dismiss, a motion for class certification, and [had] engaged in discovery," as well as the "engage[ment of] two experts regarding accounting and auditing practices in China regarding GAAP.").

Here, Lead Plaintiff and Lead Counsel had a sound basis to assess the strengths and weaknesses of the claims and Defendants' defenses when entering into the Settlement. As explained in the Rogers Declaration, Lead Plaintiff's investigation included reviewing and analyzing, among other things: filings with the U.S. Securities and Exchange Commission and the Bombay Stock Exchange by Dr. Reddy's; media and analyst reports regarding Dr. Reddy's;

---

[4] If any objections to the Settlement or requests for exclusions are received after the filing of this brief, Lead Plaintiff will respond to them in its reply papers, due on September 22, 2020.

press releases and shareholder communications regarding Dr. Reddy's; publicly available inspection reports known as Form 483s and other documents from the U.S. Food and Drug Administration ("FDA") regarding Dr. Reddy's manufacturing facilities; reports and communications between Dr. Reddy's and the FDA; and other publicly available information regarding Dr. Reddy's and the pharmaceutical industry. ¶ 15. Lead Plaintiff's investigation also included: interviews with various former employees of Dr. Reddy's, as well as other third parties, some of whom were in India; and consultations with an industry expert in pharmaceutical manufacturing and FDA regulatory compliance, as well as economic experts who analyzed market efficiency, loss causation, and damages. *Id.*

Moreover, through formal discovery, Lead Plaintiff developed additional information regarding the strengths and weaknesses of the claims and Defendants' defenses through Fed. R. Civ. P. 26 initial disclosures, production of documents, and depositions. ¶¶ 35-36. By the time of the Settlement, Lead Plaintiff had completed its production of documents, and Defendants produced 132,244 pages of documents. ¶ 36.

Lead Plaintiff and Lead Counsel were further informed by their review of Defendants': (i) briefing in support of their motion to dismiss and the Court's Opinion granting in part and denying in part such motion; (ii) briefing in opposition to Lead Plaintiff's motion for class certification; and (iii) the extensive mediation process which included the exchange of mediation statements concerning issues of both liability and damages and a full-day mediation session.

Lead Plaintiff and its counsel were therefore in an excellent position to evaluate the strengths and weaknesses of the claims asserted and defenses raised by Defendants, as well as the substantial risks of continued litigation and the propriety of settlement. Having sufficient

11

information to rigorously evaluate the case, the Action was settled on terms favorable to the Settlement Class.  The Court should find that this factor also supports approval.

### 4.    The Risks of Establishing Liability Weigh in Favor of Final Approval

The fourth *Girsh* factor looks to "the risks of establishing liability."  *Girsh*, 521 F.2d at 157.  Under this factor, "[b]y evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them."  *Beneli v. BCA Fin. Servs., Inc.*, 324 F.R.D. 89, 103 (D.N.J. 2018) (quoting *In re Gen. Motors Corp. Pick-Up Trucks Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 814 (3d Cir. 1995) ("*GMC Trucks*")).  In considering this factor, the Court has recognized that "[a] trial on the merits always entails considerable risks."  *Pro v. Hertz Equip. Rental Corp.*, No. 06-3830, 2013 WL 3167736, at *4 (D.N.J. June 20, 2013).  And "no matter how confident one may be of the outcome of the litigation, such confidence is often misplaced."  *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 343 (E.D. Pa. 2007).  Indeed, "[c]lass action securities litigation cases are notoriously difficult cases to prove."  *In re ViroPharma Inc. Sec. Litig.*, No. 12-2714, 2016 WL 312108, at *11 (E.D. Pa. Jan. 25, 2016); *see also In re Ikon Office Sols. Inc. Sec. Litig.*, 194 F.R.D. 166, 179 (E.D. Pa. 2000) (noting that "[l]arge class actions alleging securities fraud" are "inherently complicated").  While Lead Plaintiff believes that its claims are strong, the risks of establishing liability in this Action are significant and weigh heavily in favor of approval.

To establish its §10(b) claim, Lead Plaintiff must prove that Defendants: (1) made a misstatement or an omission of a material fact; (2) with scienter; (3) in connection with the purchase or sale of a security; (4) upon which the plaintiff reasonably relied; and (5) that proximately caused the injuries.  *In re Ikon Office Sols., Inc. Sec. Litig.*, 277 F.3d 658, 667 (3d Cir. 2002).  Here, Defendants would have vigorously challenged Lead Plaintiff's ability to

establish the falsity and materiality of the alleged misleading statements, scienter, as well as loss causation, among other challenges.

Regarding scienter—one of the most difficult elements to prove in a securities fraud case, *see, e.g., ViroPharma*, 2016 WL 312108, at *12; *In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525, 2007 WL 4225828, at *4 (D.N.J. Nov. 28, 2007)—Defendants would argue, among other things, that they believed that Dr. Reddy's was in compliance with cGMP standards during the class period and that they had taken all necessary steps to complete the remediation plan and satisfy the FDA. Defendants would contend that the FDA's findings of potential violations of cGMP were just potential violations that did not amount to a final determination that Dr. Reddy's actually was not in compliance. Whether or not Dr. Reddy's complied with cGMP will be subject to hotly contested expert testimony. ¶¶ 51-53.

Regarding falsity and materiality, Defendants would have vigorously maintained that the evidence showed that the FDA's findings were publicly available and that investors were fully aware of the problems facing Dr. Reddy's facilities. For instance, Defendants would argue that the Form 483 from November 2014 was made public in December of 2014, and that the contents of the Warning Letter were made public in November 2015 at the start of the class period. Moreover, Defendants would argue that they fully disclosed throughout the class period that the remediation plan would impact Dr. Reddy's manufacturing capabilities, and further that they fully disclosed the risks of failing to successfully implement the remediation plan, including the possibility of additional regulatory action by the FDA. In addition, Defendants would argue that no later than February 9, 2016, the Company fully disclosed that the remediation plan was in fact slowing down its manufacturing capabilities. ¶¶ 54-55.

Finally, even if Lead Plaintiff successfully established liability, Lead Plaintiff's ability to establish loss causation and damages also presented a significant risk to recovery in the Action. Specifically, Lead Plaintiff would need to defeat Defendants' arguments that the alleged misstatements had only a minimally inflationary effect on Dr. Reddy's ADS price during the class period. *See ViroPharma*, 2016 WL 312108, at *12 (explaining, the burden of proving loss causation and damages under Section 10(b) requires Lead Plaintiff to show that the alleged false statements or omissions caused investors' losses). The Supreme Court's decision in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005), and the subsequent cases interpreting *Dura*, have made proving loss causation even more difficult and uncertain than in the past. *In re Ocean Power Techs., Inc. Sec. Litig.*, No. 14-CV-3799, 2016 WL 6778218, at *19 (D.N.J. Nov. 15, 2016) ("proving loss causation would be a major risk faced by Plaintiff").

Using the Settlement Class Period of November 28, 2014 through September 15, 2017—the original class period in the Action—Lead Plaintiff's consulting damages expert has estimated maximum aggregate damages of approximately $245 million. However, using the post Motion to Dismiss class period of November 6, 2015 through September 15, 2017, and even assuming Lead Plaintiff prevails on all liability issues, aggregate damages recoverable at trial range from approximately $78 million and $84 million, without taking into account "disaggregation," or parsing out, of non-fraud related price decreases on certain of the corrective disclosures. Indeed, taking into account disaggregation and netting gains on pre-class period purchases, damages in the range of $38 million to $59 million appear to be the most defensible estimates. ¶ 59.

Defendants, on the other hand, would of course argue that damages for the post Motion to Dismiss class period are even smaller than Lead Plaintiff's most conservative estimate. Defendants would likely argue that Lead Plaintiff could not prove that the remaining alleged

14

misstatements impacted the price of Dr. Reddy's ADS at all, and therefore no artificial inflation existed in the price Dr. Reddy's ADS at any time during the class period.  ¶ 60.  Defendants would point to the fact that there were no statistically significant price movements in Dr. Reddy's ADS on the days of the remaining misstatements:  *Id.*  November 6, 2015, November 9, 2015, and February 9, 2016.  *Id.*  Defendants would further argue that none of the alleged corrective disclosures actually related to the alleged fraud, as they did not reveal that Defendants were not incompliance with cGMP, had not implemented a remediation plan, or had experienced a slowdown in manufacturing at the time of the alleged misstatements.  *Id.*  Because Lead Plaintiff could not show that there was a price impact due to the misstatements on either the front-end or the back-end, Defendants would argue that recoverable damages are zero.  *Id.* Additionally, Defendants would argue that the alleged price declines on each of the alleged corrective disclosure dates were caused, in whole or in substantial part, by factors unrelated to the alleged fraud.  ¶ 61.

Lead Plaintiff's proposed damages calculation would have come under sustained attack by Defendants, and the correct measure of damages would likely have come down to an inherently unpredictable and hotly disputed "battle of the experts," where it would be impossible to predict with any certainty which arguments would find favor with a jury.[5]  Moreover, it goes

---

[5] *See Par Pharm.*, 2013 WL 3930091, at *6 ("Courts in this district have recognized that competing expert testimony presents significant risks to Lead Plaintiff's success in establishing damages."); *see also Cendant*, 264 F.3d at 239 ("[E]stablishing damages at trial would lead to a 'battle of experts' with each side presenting its figures to the jury and with no guarantee whom the jury would believe."); *ViroPharma*, 2016 WL 312108, at *13 ("The conflicting damage theories of defendants and plaintiffs would likely have resulted in an expensive battle of the experts and it is impossible to predict how a jury would have responded."); *Schuler v. Medicines Co.*, No. 14-1149, 2016 WL 3457218, at *7 (D.N.J. June 24, 2016) ("In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and

without saying that if any of these arguments prevail at class certification, summary judgment, or trial, the Settlement Class will recover significantly less or, indeed, nothing at all.

In contrast to the above, the proposed Settlement provides a substantial and certain recovery of $9,000,000.00 for the benefit of the Settlement Class, without the risk, delay, and expense of continued litigation.

### 5.    Risk of Maintaining Class Certification Through Trial Weighs in Favor of Approval

The risk of obtaining and maintaining class certification through trial also supports approval of the Settlement.  Lead Plaintiff's motion for class certification was fully briefed and pending at the time of the Settlement.  While Lead Counsel believes that the requirements for Rule 23 are satisfied in this case and has vigorously argued in favor of class certification, the motion is opposed, and the outcome of the contested motion (and future appeals of a certification order via Fed. R. Civ. P. 23(f)) is far from certain.

Moreover, even if the class was certified (other than for settlement purposes), then "[t]here will always be a 'risk' or possibility of decertification, and consequently the court can always claim this factor weighs in favor of settlement."  *Prudential*, 148 F.3d at 321; *see also In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 506-07 (W.D. Pa. 2003) ("[A]s in any class action, there remains some risk of decertification in the event the Propose[d] Settlement is not approved. While this may not be a particularly weighty factor, on balance it somewhat favors approve of the proposed Settlement.").

---

ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions.").

6.    **The Ability of Defendants to Withstand a Greater Judgment**

This factor considers "whether the defendants could withstand a judgment for an amount significantly greater than the [s]ettlement." *Cendant*, 264 F.3d at 240; *Ikon Office Sols.,* 194 F.R.D. at 183 (defendants' inability to pay a greater sum would support approval of settlement). Even the "fact that [defendants] could afford to pay more does not mean that [they are] obligated to pay any more than what the [] class members are entitled to under the theories of liability that existed at the time the settlement was reached." *In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 538 (3d Cir. 2004); *see also In re Schering-Plough Corp. Sec. Litig.*, No. 01-0829, 2009 WL 5218066, at *5 (D.N.J. Dec. 31, 2009) ("pushing for more in the face of risks and delay would not be in the interests of the class"). Here, while Defendants arguably could afford to pay more, Lead Plaintiff respectfully submits that this factor should not be viewed as determinative by this Court, considering the other factors supporting approval of the Settlement.

7.    **The Size of the Settlement Fund Considering the Range of Possible Recovery and the Risks of Litigation Support Approval of the Settlement**

The final two *Girsh* factors, typically considered in tandem, ask "whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial." *Prudential*, 148 F.3d at 322. "In making this assessment, the Court compares the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, with the amount of the proposed settlement." *Par Pharm.*, 2013 WL 3930091, at *7 (citing *GMC Trucks*, 55 F.3d at 806).

The proposed $9,000,000 Settlement is reasonable given the risks of litigation (as discussed above) and the best possible recovery. As noted above and in the Rogers Declaration, Lead Plaintiff's damages expert has estimated that if liability were established with respect to the claims that survived the Court's dismissal, the most likely estimate of aggregate damages

recoverable at trial was approximately $38 million to $59 million.  ¶ 59.  The Settlement recovers between approximately 15% and 24% of aggregate damages under these scenarios.  *Id.* Estimated damages of the Court-sustained class period, without disaggregation, are between approximately $78 million and $84 million, and the Settlement Amount would be approximately 11% to 12% of these estimates.  *Id.*  Measured against these yardsticks, the Settlement recovery is very favorable given the procedural posture of the case, Defendants' countervailing legal arguments, and the risk that continued litigation might result in a vastly smaller recovery or no recovery at all.  *Id.*

That percentage recovery is also very favorable when compared to the percentage of damages recovered in other securities class action settlements.  *See, e.g., Par Pharm.*, 2013 WL 3930091, at *2 (approving settlement with total sum of $8.1 million, which amounted to approximately 7% of class-wide damages); *Schuler*, 2016 WL 3457218, at *8 (approving $4,250,000 securities fraud settlement that reflects approximately 4.0% of the estimated recoverable damages and noting percentage "falls squarely within the range of previous settlement approvals").[6]  This is particularly true considering the substantial risks and obstacles to recovery if the Action were to continue through class certification, summary judgment, trial, and (likely) post-trial motions and appeals.

---

[6] *See also In re Am. Bus. Fin. Servs. Inc. Noteholders Litig.*, No. 05-232, 2008 WL 4974782, at *13 (E.D. Pa. Nov. 21, 2008) (approving $16,767,500 settlement representing 2.5% of damages); *City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, No. 12-1609, 2015 WL 965693, at *9 (W.D. La. Mar. 3, 2015) (finding reasonable a $7,850,000 settlement in securities fraud action providing 7.4% to 10.3% of class's potential recovery); *In re Omnivision Techs. Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) ($13.75 million settlement yielding 6% of potential damages was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements").

When all the *Girsh* factors are considered, the proposed Settlement is fair, reasonable, and adequate and provides a certain outcome in the best interests of the Settlement Class. Lead Plaintiff, in conjunction with Lead and Liaison Counsel, has weighed the strengths and weaknesses of the relevant claims, defenses, and likelihood of recovery and, after extensive arm's-length negotiations through a mediator, reached this Settlement. Under these circumstances, Lead Plaintiff respectfully submits that the Settlement should be finally approved.

E.    **The *Prudential* Considerations Also Support the Settlement**

In addition to the traditional *Girsh* factors, the Third Circuit also advises courts to address the considerations set forth in *Prudential*, where applicable. With respect to the first consideration, and as previously discussed, Lead Plaintiff and Lead Counsel had a well-developed understanding of the strengths and weakness of the case gained through an extensive investigation, the drafting of a thorough and detailed amended complaint, motion practice, discovery, consultations with experts in the fields of pharmaceutical manufacturing and FDA regulation, damages, and loss causation, and the mediation process. *See* discussion *supra* at Section I.D.3.

Moreover, with respect to the second and third *Prudential* considerations, Lead Counsel is not aware of any related securities or derivative lawsuits brought by other classes or claimants.

The remaining additional *Prudential* factors all support approval of the Settlement. Class Members were afforded the right to opt out of the Settlement (the fourth factor) and, to date, none have chosen to do so. *See supra*, Section I.D. 2. Lead Counsel's request for attorneys' fees is also reasonable, as set forth in the accompanying Fee Brief (the fifth factor). And finally, the Plan of Allocation, which will govern the processing of claims and the allocation of settlement funds (the sixth factor), is fair and reasonable as set forth in Section II below.

**F.**     **Application of the Factors Identified in the Amendments to Rule 23(e)(2) Support Approval of the Settlement as Fair, Reasonable, and Adequate**

The proposed Settlement also meets the criteria set forth in the amendments to Rule 23(e)(2), most of which are covered by the Third Circuit factors discussed above.

**1.**     **Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class**

There can be little doubt that Lead Plaintiff and Lead Counsel have adequately represented the Settlement Class.  As set forth in the previously filed motion for Preliminary Approval of the Settlement and its motion seeking appointment as lead plaintiff, Lead Plaintiff Mississippi PERS, like all other members of the Settlement Class, acquired ADSs of Dr. Reddy's during the Class Period, when their price was allegedly artificially inflated by false and misleading statements.  Thus, the claims of the Settlement Class and Lead Plaintiff would prevail or fail in unison, and the common objective of maximizing recovery from Defendants aligns the interests of Lead Plaintiff and all members of the Settlement Class.  *In re Schering-Plough Corp./ENHANCE Sec. Litig.*, No. 08–39, 2012 WL 4482032, at *3 (D.N.J. Sept. 25, 2012).

Additionally, throughout the Action, Lead Plaintiff had the benefit of the advice of knowledgeable counsel well-versed in shareholder class action litigation and securities fraud cases.  Lead Counsel, Labaton Sucharow, and Liaison Counsel, Kaplan Fox, are highly qualified, experienced, and capable of prosecuting actions such as this.  These firms have decades of collective experience and proven track records of success in class action and complex securities litigation.  *See* Exs. 3-D and 4-C.

**2.**     **The Settlement Is the Result of Arm's-Length Negotiations**

As discussed above, and the Rogers Declaration, the Settlement was reached after arm's-length negotiations between counsel and overseen by an experienced Mediator.  This factor clearly supports approval of the Settlement.

20

### 3.    The Relief Provided to the Settlement Class is Adequate

Rule 23(e)(2)(C) has four (4) parts.  Rule 23(e)(2)(C)(i), considers whether "the relief provided for the class is adequate, taking into account the costs, risks, and delay of trial and appeal," and has been already explained above.

Rule 23(e)(2)(C)(ii) considers whether the relief is adequate, considering the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."  As set forth below in Section II, discussing the proposed Plan of Allocation, the proceeds of the Settlement will be distributed to Class Members who submit valid and timely claims.  The Claims Administrator will calculate claimants' Recognized Claims using the transactional information provided by claimants in their Claim Forms, which can be mailed to the Claims Administrator, submitted online using the settlement website, or, for large investors, with hundreds of transactions, via e-mail to the Claims Administrator's electronic filing team.  Because most securities are held in "street name" by the brokers that buy them on behalf of clients, the Claims Administrator, Lead Counsel, and Defendants do not have Class Members' transactional data, and a claims process is required.  Because the Settlement does not recover 100% of alleged damages, the Claims Administrator will determine each eligible claimant's *pro rata* share of the Net Settlement Fund based upon each claimant's total "Recognized Claim" compared to the aggregate Recognized Claims of all eligible claimants.

Once the Claims Administrator has processed all submitted claims, notified claimants of deficiencies or ineligibility, processed responses, and made claim determinations, Lead Counsel will seek Court approval of a distribution, provided that at least six months have passed from the Effective Date and subject to the provisions of ¶ 26 of the Stipulation concerning the creation of a Tax Reserve, if a final determination about Indian Taxes has not been obtained.  Payments will be made to eligible claimants in the form of checks and wire transfers.  After an initial

distribution of the Net Settlement Fund, if there is any balance remaining in the Net Settlement Fund after at least six (6) months from the date of initial distribution, Lead Counsel will, if feasible and economical, re-distribute the balance among eligible claimants who have cashed their checks.  These re-distributions will be repeated until the balance in the Net Settlement Fund is no longer feasible to distribute.  Any balance that still remains in the Net Settlement Fund after re-distribution(s), which is not feasible or economical to reallocate, after payment of any outstanding Notice and Administration Expenses or Taxes and Tax Expenses, will be contributed to a non-profit and non-sectarian organization(s) proposed by Lead Plaintiff and approved by the Court.

Rule 23(e)(2)(C)(iii) concerns the terms of any proposed award of attorneys' fees, including timing of payment, which are  discussed in Lead Counsel's accompanying Fee Brief.

And finally, Rule 23(e)(2)(C)(iv) considers the fairness of the proposed Settlement considering any agreement required to be identified under Rule 23(e)(3).  The only agreements among the Parties in connection with the Settlement are the Stipulation, including the banking escrow agreements referenced therein, and the Supplemental Agreement Regarding Requests for Exclusion, which has not been filed with the Court, concerning the circumstances under which Defendants may terminate the Settlement based upon the number of exclusion requests received. *See* Stipulation at ¶ 42.  It is standard to keep such agreements confidential so that a large investor, or a group of investors, cannot intentionally try to leverage a better recovery for themselves by threatening to opt out, at the expense of the class.  The Supplemental Agreement can be provided to the Court *in camera* or under seal.

## II.    THE PLAN OF ALLOCATION FOR THE PROCEEDS OF THE SETTLEMENT IS FAIR AND REASONABLE AND SHOULD BE APPROVED

The "[a]pproval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate." *In re Merck & Co. Vytorin ERISA Litig.*, No. 08–CV–2852010 WL 547613, at \*6 (D.N.J. Feb. 9, 2010) (citing *Ikon Office Sols.,* 194 F.R.D. at 184). "In evaluating a plan of allocation, the opinion of qualified counsel is entitled to significant respect. The proposed allocation need not meet standards of scientific precision, and given that qualified counsel endorses the proposed allocation, the allocation need only have a reasonable and rational basis." *Boyd v. Coventry Health Care Inc.*, No. 09-2661, 2014 WL 359567, at \*8 (D. Md. Jan. 31, 2014).

Here, the proposed Plan of Allocation, developed by Lead Counsel in consultation with Lead Plaintiff's damages expert Chad Coffman, provides a fair and reasonable method to allocate the Net Settlement Fund among Class Members who submit valid Claim Forms. Under the Plan of Allocation, a "Recognized Loss Amount" will be calculated for each purchase or acquisition of Dr. Reddy's ADS during the Class Period listed in the Claim Form and for which adequate documentation is provided. *See* Ex. 2-A at ¶¶ 51-70. The calculation of Recognized Loss Amounts is generally based on the difference between the amount of estimated alleged artificial inflation in Dr. Reddy's ADSs on the date the shares were purchased and the amount of estimated alleged artificial inflation on the date of sale. *Id.* Lead Plaintiff's damages expert calculated the estimated alleged artificial inflation by considering price changes in Dr. Reddy's ADSs in reaction to the alleged corrective disclosures. *Id.* The sum of the Recognized Loss Amounts for all of a claimant's purchases or acquisitions of Dr. Reddy's ADSs during the Class Period is the claimant's "Recognized Claim" and the Net Settlement Fund will be allocated to

23

Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. *Id*.

Lead Counsel submits that the Plan of Allocation fairly and rationally allocates the proceeds of the Net Settlement Fund among Class Members with losses suffered due to the conduct alleged in the Complaint.  *See e.g.*, *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) (deeming plan of allocation "even handed" where "claimants are to be reimbursed on a *pro rata* basis for their recognized losses based largely on when they bought and sold their shares of General Instrument stock"); *see also Ocean Power*, 2016 WL 6778218, at *23 ("pro rata distributions are consistently upheld, and there is no requirement that a plan of allocation 'differentiat[e] within a class based on the strength or weakness of the theories of recovery'") (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 328 (3d Cir. 2011)).  Moreover, there have been no objections to the proposed Plan of Allocation to date.[7]  Accordingly, for the reasons set forth herein and in the Rogers Declaration, the Plan of Allocation is fair and reasonable and should be approved.

## III.    CERTIFICATION OF THE SETTLEMENT CLASS REMAINS WARRANTED

In presenting the proposed Settlement to the Court for preliminary approval, Lead Plaintiff requested, for purposes of the Settlement only, that the Court certify the Settlement Class under Rules 23(a) and (b)(3).  In the Preliminary Approval Order, this Court preliminarily certified the Settlement Class.  ECF No. 96 at 2.  Nothing has changed to alter the propriety of the Court's preliminary certification, and, to date, no Class Member has objected to class certification.  For all the reasons stated in Lead Plaintiff's Memorandum of Law in Support of

---

[7] If any objections to the Plan of Allocation are received after the filing this brief, Lead Plaintiff will respond in its reply papers due September 22, 2020.

Lead Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement, (ECF No. 94 at 16-23), incorporated herein by reference, Lead Plaintiff requests the Court grant final certification to the Settlement Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3), appoint Mississippi PERS as Class Representative, and appoint Labaton Sucharow as Class Counsel and Kaplan Fox as Liaison Counsel.

## IV.    NOTICE TO THE SETTLEMENT CLASS SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

Notice of the proposed Settlement to the Settlement Class satisfied Rule 23's requirement of "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974).

In accordance with the Court's Preliminary Approval Order, the Claims Administrator began mailing copies of the Claim Packet to potential Class Members and their nominees on June 2, 2020 and 25,638 Claim Packets have been mailed as of the date this motion was filed. *See* Ex. 2 at ¶¶ 3-11. The Notice advised potential Class Members of, among other things: (i) their right to exclude themselves from the Settlement Class; (ii) their right to object to any aspect of the Settlement, the Plan of Allocation, or the attorneys' fees and expense request; and (iii) the method for submitting a Claim Form in order to be eligible to receive a payment from the proceeds of the Settlement. *See generally* Ex. 2-A. In addition, the Summary Notice was published in *Investor's Business Daily* and *PR Newswire* on June 15, 2020, and copies of the Notice, Claim Form, Stipulation, Preliminary Approval Order, and Complaint have been posted to the website established for the Settlement, www.DrReddysSecuritiesSettlement.com. *Id*. at ¶¶ 12, 15.

25

Notice programs such as this have been approved in a multitude of class action settlements. *See, e.g.*, *In re Veritas Software Corp. Sec. Litig.*, 396 F. App'x. 815, 816 (3d Cir. 2010) (describing notice combining mail to known class members and publication in *Investor's Business Daily* and over newswire); *Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1985) ("It is well settled that in the usual situation first-class mail and publication in the press fully satisfy the notice requirements of both Fed. R. Civ. P. 23 and the due process clause."). The Notice program satisfied Rule 23(e)(1)'s requirement that notice of a settlement be "reasonable"—*i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 114 (2d Cir. 2005), and it was "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

## V.      CONCLUSION

For all the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant: (i) final approval of the Settlement and Plan of Allocation; and (ii) final certification of the Settlement Class for the purposes of carrying out the Settlement.

Dated: August 25, 2020                    Respectfully submitted,

**KAPLAN FOX & KILSHEIMER LLP**

 */s/ Joel B. Strauss*

Joel B. Strauss
850 Third Avenue
New York, New York 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714
E-mail: jstrauss@kaplanfox.com

William J. Pinilis
160 Morris Street
Morristown, New Jersey 07960
Telephone: (973) 656-0222

26

Facsimile: (973) 401-1114
E-mail: wpinilis@kaplanfox.com

*Liaison Counsel for the Lead Plaintiff and the Proposed Class*

**LABATON SUCHAROW LLP**
James W. Johnson (Admitted pro hac vice)
Michael H. Rogers (Admitted pro hac vice)
John Esmay (Admitted pro hac vice)

140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
E-mail: jjohnson@labaton.com
E-mail: mrogers@labaton.com
E-mail: jesmay@labaton.com

*Lead Counsel for Public Employees'
Retirement System of Mississippi and
Lead Counsel for the Proposed Class*

27

**CERTIFICATE OF SERVICE**

I certify that on August 25, 2020, I electronically filed the foregoing Lead Plaintiff's

Memorandum of Law in Support of Motion for Final Approval of Class Action Settlement and

Plan of Allocation, using the Court's CM/ECF system, which will be sent electronically to the

registered participants as identified on the attached Electronic Mail Notice List.


*/s/ Joel B. Strauss*
Joel B. Strauss

28